

In The

Court of Appeals

Seventh District of Texas at Amarillo

_____

No. 07-21-00143-CV
_____

IN THE INTEREST OF J.L.B., A CHILD

On Appeal from the County Court at Law No. 1
Randall County, Texas
Trial Court No. 69,035-L1, Honorable James W. Anderson, Judge Presiding

December 15, 2021

MEMORANDUM OPINION

Before PIRTLE and PARKER and DOSS, JJ.

In this accelerated appeal, appellants, Mother and Father, appeal the judgment of

the trial court terminating their parental rights to J.L.B.[1]  The appellee is the Texas

Department of Family and Protective Services.  Mother challenges the sufficiency of the

evidence to support the trial court's findings under the predicate grounds, and the finding

that termination is in the best interest of the child.  Appointed counsel for Father has filed

---

[1]To protect the privacy of the parties involved, we refer to the mother of the child as "Mother," the father of the child as "Father," and the child by her initials.  *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b).

an *Anders*[2] brief in support of a motion to withdraw.  We affirm the judgment of the trial court as to Mother and Father.

## Background

The child the subject of this appeal is J.L.B.  J.L.B. was born on February 3, 2015.

In October of 2015, the Department became involved with Mother, Father, and J.L.B. due to allegations of neglectful supervision, domestic violence, and methamphetamine use after Mother left J.L.B. in the care of B.G., the maternal grandmother.  During the Department's investigation, Mother blamed B.G. for the Department's involvement and raised concerns about B.G.'s care of J.L.B.  According to Mother, B.G. had a lengthy history of substance abuse and was not an appropriate caregiver for J.L.B.  In March of 2017, Mother completed her plan of services and J.L.B. was returned to her care.  As a part of the reunification plan, Mother was not to permit unsupervised contact between J.L.B. and B.G. or Father.

Sometime after the 2015 case concluded, Mother and J.L.B. moved into B.W.'s residence.  In 2018, Mother relapsed and began using methamphetamine again.  She placed J.L.B. in B.W.'s care.  Also in 2018, B.W.'s husband, J.W., was released from prison and moved into B.W.'s home.

In November of 2020, the Department opened an investigation after receiving a report alleging neglectful supervision of five-year-old J.L.B. by B.W. and J.W.  The report also alleged concerns of drug use by Mother, B.W., and J.W.  The report alleged that law

---

[2] *See Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).

enforcement officers initiated a traffic stop after observing a vehicle with a defective taillight ignoring traffic control signs near the Dallas/Fort Worth airport. The investigating officer noted that the driver, J.W., had bloodshot eyes and slurred speech. J.L.B. was lying unrestrained in the back seat of the vehicle at the time of the stop. B.W. was seated in the front passenger seat. After discovering methamphetamine and drug paraphernalia in the vehicle, J.W. and B.W. were arrested for possession of a controlled substance and child endangerment. At the time of her arrest, B.W. admitted she had a pipe in her purse and had used methamphetamine the day prior. Police officers found a baggie in the passenger-side door containing pills, methamphetamine, and two syringes. They also found a small bag of methamphetamine on the passenger floorboard. B.W. told the officers that J.L.B.'s mother lived in Amarillo and that J.L.B. lived with B.W. due to Mother's drug use.

During the Department's investigation, B.W. told the investigator that she had possession of J.L.B. because Mother was using methamphetamine. The investigator attempted to locate Mother by using contact information from a prior CPS case, but she was unsuccessful. The investigator located Father in a federal penitentiary and he remained there throughout the pendency of this proceeding.

The Department filed its petition seeking a modification[3] of conservatorship and termination of parental rights. Following an adversary hearing, the Department was appointed temporary managing conservator and J.L.B. was placed with a foster family in

---

[3] The clerk's record contains an agreed order of conservatorship dated March 30, 2017. This order was entered as a result of the Department's investigation in 2015.

3

Amarillo.

The associate judge conducted a bench trial through Zoom videoconferencing on June 14, 2021.[4]  Although Mother and Father were each represented by counsel, neither appeared at the final hearing.

The caseworker testified that she spoke to Mother one time during the pendency of the case, on February 9, 2021.  According to the caseworker, Mother did not want anything to do with the case.  Mother told the caseworker that she was living in Oklahoma, she was in "big trouble" with her probation, and she expected to be sentenced to prison for a significant amount of time.  Mother declined to meet with the caseworker and declined to work the service plan prepared by the Department.  Mother did not answer subsequent calls from the caseworker.

The Department produced evidence that Mother pled guilty in May of 2015 to a state jail felony offense of credit card or debit card abuse and was placed on a four-year deferred adjudication probation.  As a part of her probation, Mother was to abstain from the use of illegal substances and refrain from committing another criminal offense.  In January of 2016, Mother's probation was modified to include a requirement that she complete a drug rehabilitation program at an Intermediate Sanction Facility (ISF).  In March of 2021, an amended motion to proceed to adjudication was filed.  That motion alleged that Mother violated the terms of her probation by using methamphetamine "on

---

[4] In response to the threat presented by the COVID-19 pandemic, the Texas Supreme Court issued numerous emergency orders authorizing anyone involved in any hearing to participate remotely, such as by videoconferencing. *See* TEX. GOV'T CODE ANN. § 22.0035(b).  One such order was effective as of the date of this hearing.

4

or about 7/23/2020" and "8/3/2020," failing to report monthly since September of 2020, and failing to comply with the terms and conditions of the drug court program.

The Department presented evidence that Mother has not had any contact or visitation with J.L.B. since J.L.B. was removed from the care of B.W. in November of 2020. The caseworker testified that Mother knew that B.W. had a history of drug usage and knowingly placed J.L.B. in B.W.'s care. She further testified that it is in the best interest of J.L.B. to terminate Mother's parental rights because Mother has admitted to current methamphetamine use, is not able to provide J.L.B. with a safe and stable home, did not want to work any services, and is expected to be sentenced to prison.

The Department offered evidence that Father is incarcerated in Colorado and has not had any contact with J.L.B. for several years. A service plan was created for Father, but he did not complete any services. According to the caseworker, Father has a long history with the Department and a significant criminal history. Father's expected release date from prison is 2025. In 2018, Father had his parental rights to another child terminated on endangerment grounds. A certified copy of the termination order was admitted without objection.

J.L.B. is placed in a foster home in Amarillo. This is the same foster home placement that J.L.B. had in the 2015 case. The foster family maintained contact with Mother after the 2015 case concluded and babysat J.L.B. on occasion. Mother contacted the foster mother when J.L.B. was removed in the current case to see if J.L.B. could be placed with her. J.L.B. is doing "really well" in this placement, she is "well adjusted," and feels safe there. J.L.B. related that she wants to have the same last name as her foster

5

parents. She told the caseworker that she is "scared" when she is with B.W. and J.W. She does not want to live with them because "they fight and hit each other." If parental rights are terminated, the foster family plans to adopt J.L.B.

The trial court terminated Mother's parental rights to J.L.B. on the grounds of endangering conditions, endangerment, constructive abandonment, and failure to comply with a court order that established actions necessary to obtain return of the child. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), (O).[5] The trial court also found that termination was in the best interest of J.L.B. *See* § 161.001(b)(2). The trial court terminated Father's parental rights to J.L.B. on the grounds of previous termination of parental rights to another child based on endangering conditions or endangerment, constructive abandonment, and failure to comply with a court order that established actions necessary to obtain return of the child. *See* § 161.001(b)(1) (M), (N), (O). The trial court also found that termination was in the best interest of J.L.B. *See* § 161.001(b)(2). The Department was appointed the permanent managing conservator of J.L.B.

In July of 2021, the Honorable James W. Anderson granted Mother's request for a de novo hearing and considered the entire record from the prior hearing. In August of 2021, Judge Anderson affirmed the order of the associate judge.

Mother and Father timely appealed the resulting judgment.

---

[5] Further references to provisions of the Texas Family Code will be by reference to "section ___" or "§ ___."

Standard of Review

When reviewing the legal sufficiency of the evidence in a termination case, the appellate court should look at all the evidence in the light most favorable to the trial court's finding "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.,* 96 S.W.3d 256, 266 (Tex. 2002). To give appropriate deference to the factfinder's conclusions, we must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved or found to have been not credible, but we do not disregard undisputed facts. *Id.* Even evidence that does more than raise surmise or suspicion is not sufficient unless that evidence can produce a firm belief or conviction that the allegation is true. *In re K.M.L.,* 443 S.W.3d 101, 113 (Tex. 2014). If, after conducting a legal sufficiency review, we determine that no reasonable factfinder could have formed a firm belief or conviction that the matter that must be proven was true, then the evidence is legally insufficient, and we must reverse. *Id.* (citing *In re J.F.C.,* 96 S.W.3d at 266).

In a factual sufficiency review, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *In re J.F.C.,* 96 S.W.3d at 266. We must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. *Id.* We must also consider whether disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *Id.* If, considering the entire record, the disputed evidence that a reasonable factfinder could not have

credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

Applicable Law

A parent's right to the "companionship, care, custody, and management" of his or her child is a constitutional interest "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *see In re M.S.,* 115 S.W.3d 534, 547 (Tex. 2003). Consequently, we strictly scrutinize termination proceedings and strictly construe the involuntary termination statutes in favor of the parent. *Holick v. Smith,* 685 S.W.2d 18, 20 (Tex. 1985). However, "the rights of natural parents are not absolute" and "[t]he rights of parenthood are accorded only to those fit to accept the accompanying responsibilities." *In re A.V.,* 113 S.W.3d 355, 361 (Tex. 2003) (citing *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994)). Recognizing that a parent may forfeit his or her parental rights by his or her acts or omissions, the primary focus of a termination suit is protection of the child's best interests. *See id.*

In a case to terminate parental rights under section 161.001 of the Family Code, the petitioner must establish, by clear and convincing evidence, that (1) the parent committed one or more of the enumerated acts or omissions justifying termination, and (2) termination is in the best interest of the child. § 161.001(b). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007; *In re J.F.C.,* 96 S.W.3d at 264. Both elements must be established and termination may not be based solely on the best interest of the child as determined by the

8

trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re K.C.B.,* 280 S.W.3d 888, 894 (Tex. App.—Amarillo 2009, pet. denied). "Only one predicate finding under section 161.001[(b)](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.,* 113 S.W.3d at 362. We will affirm the termination order if the evidence is both legally and factually sufficient to support any alleged statutory ground the trial court relied upon in terminating the parental rights if the evidence also establishes that termination is in the child's best interest. *In re K.C.B.*, 280 S.W.3d at 894-95.

The clear and convincing evidence standard does not mean the evidence must negate all reasonable doubt or that the evidence must be uncontroverted. *In re R.D.S.*, 902 S.W.2d 714, 716 (Tex. App.—Amarillo 1995, no writ). The reviewing court must recall that the trier of fact has the authority to weigh the evidence, draw reasonable inferences therefrom, and choose between conflicting inferences. *Id.* The factfinder also enjoys the right to resolve credibility issues and conflicts within the evidence and may freely choose to believe all, part, or none of the testimony espoused by any witness. *Id.* Where conflicting evidence is present, the factfinder's determination on such matters is generally regarded as conclusive. *In re B.R.*, 950 S.W.2d 113, 121 (Tex. App.—El Paso 1997, no writ).

The appellate court cannot weigh witness credibility issues that depend on demeanor and appearance as the witnesses are not present. *In re J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005). Even when credibility issues are reflected in the written transcript, the appellate court must defer to the factfinder's determinations, if those determinations are not themselves unreasonable. *Id.*

9

A determination of best interest necessitates a focus on the child, not the parent. *In re B.C.S.,* 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.). Appellate courts examine the entire record to decide what is in the best interest of the child. *In re E.C.R.,* 402 S.W.3d 239, 250 (Tex. 2013). There is a strong presumption that it is in the child's best interest to preserve the parent-child relationship. *In re R.R.,* 209 S.W.3d 112, 116 (Tex. 2006).

In assessing whether termination is in a child's best interest, the courts are guided by the non-exclusive list of factors in *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). These factors include: (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not proper, and (9) any excuse for the acts or omissions of the parent. *Id.* "[T]he State need not prove all of the factors as a condition precedent to parental termination, 'particularly if the evidence were undisputed that the parental relationship endangered the safety of the child.'" *In re C.T.E.*, 95 S.W.3d 462, 466 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (quoting *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002)). Evidence that supports one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *See In re E.C.R.*, 402 S.W.3d at 249. The best interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as

well as direct evidence. *In re N.R.T.,* 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.). We must also bear in mind that a child's need for permanence through the establishment of a stable, permanent home has been recognized as the paramount consideration in determining best interest. *See In re K.C.,* 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.).

Mother's Appeal

By her appeal, Mother raises two issues. In her first issue, she challenges the sufficiency of the evidence to support the trial court's finding that termination was in J.L.B.'s best interest. In her second issue, Mother challenges the sufficiency of the evidence to support the predicate grounds for termination. Logic dictates that we address Mother's second issue before we address issue one.

Sufficiency of the Evidence Under Section 161.001(b)(1)(D) and (E)

In her second issue, Mother challenges the legal and factual sufficiency of the evidence to support the termination of her parental rights under subsections 161.001(b)(1)(D), (E), (N), and (O). Ordinarily, only one statutory predicate ground is required to support termination when there is also a finding that termination is in the child's best interest. *In re A.V.,* 113 S.W.3d at 362. However, in light of the Texas Supreme Court opinion in *In re N.G.,* we review the trial court's findings under both subsections (D) and (E), when raised on appeal because of the potential future consequences to Mother's parental rights in a future proceeding concerning a different child. *In re N.G.,* 577 S.W.3d 230, 235-37 (Tex. 2019) (per curiam).

A trial court may order termination of a parent-child relationship if the court finds by clear and convincing evidence that a parent has knowingly placed or knowingly allowed a child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child and/or engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child. *See* § 161.001(b)(1)(D), (E). Both subsections (D) and (E) require proof of endangerment. To "endanger" means to expose the child to loss or injury or to jeopardize the child's emotional or physical health. *Boyd,* 727 S.W.2d at 533. A child is endangered when the environment creates a potential for danger that the parent is aware of but consciously disregards. *J.S. v. Tex. Dep't of Family & Protective Servs.,* 511 S.W.3d 145, 159 (Tex. App.—El Paso 2014, no pet.). Endanger means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, but it is not necessary that the conduct be directed at the child or that the child suffer injury. *In re N.K.,* 399 S.W.3d 322, 330-31 (Tex. App.—Amarillo 2013, no pet.).

While both subsections (D) and (E) focus on endangerment, they differ regarding the source of the physical or emotional endangerment to the child. *See In re B.S.T.*, 977 S.W.2d 481, 484 (Tex. App.—Houston [14th Dist.] 1998, no pet.). Subsection (D) requires a showing that the environment in which the child is placed endangered the child's physical or emotional health. *Doyle v. Tex. Dep't of Protective & Regulatory Servs.,* 16 S.W.3d 390, 394 (Tex. App.—El Paso 2000, pet. denied). Conduct of a parent or another person in the home can create an environment that endangers the physical and emotional well-being of a child as required for termination under

12

subsection (D). *In re W.S.*, 899 S.W.2d 772, 776 (Tex. App.—Fort Worth 1995, no pet.). Inappropriate, abusive, or unlawful conduct by persons who live in the child's home or with whom the child is compelled to associate on a regular basis in his home is a part of the "conditions or surroundings" of the child's home under subsection (D). *In re M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.) (op. on reh'g). The factfinder may infer from past conduct endangering the child's well-being that similar conduct will recur if the child is returned to the parent. *Id.* Thus, subsection (D) addresses the child's surroundings and environment rather than parental misconduct, which is the subject of subsection (E). *Doyle*, 16 S.W.3d at 394.

Under subsection (E), the cause of the danger to the child must be the parent's conduct alone, as evidenced not only by the parent's actions, but also by the parent's omission or failure to act. *In re M.J.M.L.,* 31 S.W.3d 347, 350-51 (Tex. App.—San Antonio 2000, pet. denied); *Doyle*, 16 S.W.3d at 395. To be relevant, the conduct does not have to have been directed at the child, nor must actual harm result to the child from the conduct. *Dupree v. Tex. Dep't of Protective & Regulatory Servs.,* 907 S.W.2d 81, 84 (Tex. App.—Dallas 1995, no writ). Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re E.P.C.*, 381 S.W.3d 670, 683 (Tex. App.—Fort Worth 2012, no pet.). The specific danger to the child's well-being need not be established as an independent proposition but may be inferred from parental misconduct. *In re B.C.S.*, 479 S.W.3d at 926. "[A] parent's use of narcotics and its effect on his or her ability to parent may qualify as an endangering course of conduct." *In re J.O.A.,* 283 S.W.3d 336, 345 (Tex. 2009). Because the evidence pertaining to

13

subsections 161.001(b)(1)(D) and (E) is interrelated, we may conduct a consolidated review. *In re M.R.J.M.*, 280 S.W.3d at 503.

The trial court heard evidence that Mother has a five-year history with the Department due to her ongoing substance abuse and resulting incarcerations. In 2015, two months after J.L.B.'s birth, Mother pled guilty to a state jail felony and was placed on community supervision probation for four years. Within a few months of being placed on community supervision, J.L.B. was removed from Mother's care due to drug use and domestic violence in the home of Mother and Father. In January of 2016, Mother was incarcerated in an ISF facility after she violated the terms of her probation.

After Mother regained possession of J.L.B. in 2017, she left J.L.B. in the care of B.W. knowing that B.W. was a long-time drug abuser. Additionally, the trial court heard testimony that Mother is facing significant prison time due to her continued use of methamphetamine and a motion to adjudicate her felony offense was pending. A parent's ongoing drug abuse is conduct that subjects a child to a life of uncertainty and instability, which endangers the physical and emotional well-being of the child. *See In re A.B.,* 125 S.W.3d 769, 777 (Tex. App.—Texarkana 2003, pet. denied). Moreover, "intentional criminal activity that exposes a parent to incarceration is relevant evidence tending to establish a course of conduct endangering the emotional and physical well-being of a child." *In re E.L.,* No. 09-15-00306-CV, 2016 Tex. App. LEXIS 885, at *16 (Tex. App.—Beaumont Jan. 28, 2016, pet. denied) (mem. op.). "[A] parent's decision to leave a child in the care of a known drug user is relevant to the predicate acts or omissions outlined in subsections (D) and (E)." *In re J.J.,* No. 07-13-00117-CV, 2013 Tex. App. LEXIS 11194, at *12 (Tex. App.—Amarillo Aug. 29, 2013, no pet.) (mem. op.). The evidence that a

14

parent allowed a child to be around persons using drugs can support the conclusion that the child's surroundings endanger her physical or emotional well-being under subsection (D) and can qualify as a voluntary, deliberate, and conscious course of conduct endangering the child's well-being under subsection (E). *See In re C.V.L.*, 591 S.W.3d 734, 751 (Tex. App.—Dallas 2019, pet. denied).

Having examined the entire record, we find that the trial court could reasonably form a firm belief or conviction that Mother knowingly placed or knowingly allowed J.L.B. to remain in conditions or surroundings which endangered her physical or emotional well-being and engaged in conduct which endangered J.L.B.'s emotional and physical well-being. The same evidence is factually sufficient to support the trial court's affirmative finding. We overrule issue two.

In light of our conclusion regarding the trial court's findings on subsections (D) and (E), we need not address the findings under subsections (N) and (O). *In re A.V.,* 113 S.W.3d at 362.

Best Interest

In her remaining issue, Mother challenges the factual and legal sufficiency of the evidence to support the best interest finding made under section 161.001(b)(2).

The trial court was allowed to consider evidence in support of the predicate grounds in making the best interest determination. *See In re E.C.R.*, 402 S.W.3d at 249. That evidence established that Mother has a history with the Department since 2015, a substance abuse problem due to her use of methamphetamine, a criminal history including credit card abuse, violation of her community supervision resulting in

15

incarceration, and leaving J.L.B. in the custody of B.W., a longtime drug abuser. The statutory grounds for termination are significant in our review of the best interest finding.

The court also heard evidence from which it could have concluded that Mother was largely disinterested in J.L.B. The caseworker testified that she offered Mother a family plan of service and visitation with J.L.B., but Mother refused any involvement in the case. The factfinder can infer from a parent's failure to take the initiative to utilize the available programs that the parent did not have the ability to motivate herself in the future. *In re S.P.*, 509 S.W.3d 552, 558 (Tex. App.—El Paso 2016, no pet.). A trial court is permitted to consider a parent's failure to comply with a family plan of service in its best interest determination. *In re S.B.,* 207 S.W.3d 877, 887-88 (Tex. App.—Fort Worth 2006, no pet.). This evidence weighs heavily in favor of the best interest finding.

Stability and permanence are paramount in the upbringing of children. *In re J.D.,* 436 S.W.3d 105, 120 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The factfinder may compare the parent's and the Department's plans for the child and determine whether the plans and expectations of each party are realistic or weak and ill-defined. *Id.* at 119-20. Mother did not testify at the termination hearing or offer any specifics of her plans for J.L.B. The record does not indicate that Mother had any bond with J.L.B. The Department caseworker testified that Mother refused to engage in any services and has had no recent contact with the Department. Further, Mother admitted to the caseworker she had violated her probation and was looking at significant jail time. Conversely, the foster family is providing a drug-free environment and the stability, structure, security, and consistency that J.L.B. needs. The evidence shows that J.L.B. is strongly bonded with her foster family and she wants to have their last name. This is the same foster family that cared

16

for J.L.B. when the Department was involved in 2015. J.L.B. is doing well in the home and the foster family plans to adopt J.L.B. According to the caseworker, J.L.B. is thriving in the home and she is well cared for in this placement. When children are too young to express their desires, the factfinder may consider whether the children have bonded with the foster family, are well-cared for by them, and have spent minimal time with a parent. *In re S.R.,* 452 S.W.3d 351, 369 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). Further, the Department's plan for J.L.B.'s adoption provides permanence and stability for J.L.B. and weighs heavily in favor of the trial court's conclusion that termination of Mother's parental rights is in the best interest of J.L.B.

We conclude the evidence is legally and factually sufficient to establish a firm conviction in the mind of the trial court that termination of Mother's parental rights is in the best interest of J.L.B. We overrule Mother's issue challenging the best interest determination.

Father's Appeal

Pursuant to *Anders*, Father's court-appointed appellate counsel has filed a brief certifying that he has diligently searched the record and has concluded that the record reflects no arguably reversible error that would support an appeal. *In re L.J.*, No. 07-14-00319-CV, 2015 Tex. App. LEXIS 427, at *2-3 (Tex. App.—Amarillo Jan. 15, 2015, no pet.) (mem. op.); *In re Schulman*, 252 S.W.3d 403, 406 n.9 (Tex. Crim. App. 2008) (orig. proceeding); *Porter v. Tex. Dep't of Protective & Regulatory Servs.*, 105 S.W.3d 52, 56 (Tex. App.—Corpus Christi 2003, no pet.) ("[W]hen appointed counsel represents an

indigent client in a parental termination appeal and concludes that there are no non-frivolous issues for appeal, counsel may file an *Anders*-type brief").

Counsel certifies that he has diligently researched the law applicable to the facts and issues and discusses why, in his professional opinion, the appeal is frivolous. *In re D.A.S.*, 973 S.W.2d 296, 297 (Tex. 1998) (orig. proceeding). By his *Anders* brief, counsel concludes that reversible error is not present because Father had the benefit of appointed, effective counsel, and sufficient evidence supports termination under subsections (M), (N), and (O) in the trial court's order. *See In re A.V.*, 113 S.W.3d at 362; *In re T.N.*, 180 S.W.3d 376, 384 (Tex. App.—Amarillo 2005, no pet.) (only one predicate finding under section 161.001(b)(1) is necessary to support termination when there is also a finding that termination is in a child's best interest). Counsel has complied with the requirements of *Anders* by providing a copy of the brief, motion to withdraw, and appellate record to Father, and notifying him of his right to file a pro se response if he desired to do so. *Kelly v. State*, 436 S.W.3d 313, 319-20 (Tex. Crim. App. 2014); *In re L.V.*, No. 07-15-00315-CV, 2015 Tex. App. LEXIS 11607, at *2-3 (Tex. App.—Amarillo Nov. 9, 2015) (order) (per curiam). Father has not filed a response to his counsel's *Anders* brief.

As in a criminal case, we have independently examined the entire record to determine whether there is a non-frivolous issue that might support the appeal. *See Penson v. Ohio*, 488 U.S. 75, 82-83, 109 S. Ct. 346, 102 L. Ed. 2d 300 (1988); *Stafford v. State*, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991). Our independent review supports termination under subsection (M). *In re A.C.,* 394 S.W.3d 633, 641 (Tex. App.—Houston [1st. Dist.] 2012, no pet.). Based on this record, we conclude that a reasonable factfinder could have formed a firm belief or conviction that grounds for termination existed, and that

termination of Father's parental rights was in the best interest of J.L.B. *See* § 161.001(b)(1), (2). After reviewing the record and the *Anders* brief, we agree with counsel that there are no plausible grounds for reversal.

We affirm the trial court's order terminating Father's parental rights to J.L.B.

## Conclusion

Having overruled both of Mother's issues and finding no plausible grounds for reversal in Father's appeal, we affirm the judgment of the trial court terminating Mother's and Father's parental rights.

Judy C. Parker
*Justice*

19